United States v. Andrew Zarauskas Go ahead. May it please the court, Steve Smith. The government has improperly intruded upon the appellant's Fifth Amendment right to remain silent and improperly shifted the burden of proof to the appellant in violation of due process of law. This court, in simple data, has said that the Fifth Amendment forbids any comment by the prosecutor on the defendant's right to remain silent and that context matters. Here the government engaged in a calculated strategy throughout the course of the trial, both during its case in chief and at closing argument, to shift the burden of proof from the government to the defendant as well as to comment on his silence. There's four instances of note, and I've actually grouped these in two, but they're really four separate instances, but the groups are connected. The first instance is what I think is sometimes referred to as the Café Vivaldi exchange, where Mr. Zarauskas goes to the café, meets with the agents, a recording is made, and that recording is played at trial. That's a non-custodial meeting. It is. And that raises some different issues, I think, which I hope you'll discuss, because we haven't really, I think, focused entirely on whether non-custodial meetings are different for the arguments you're making. I'm happy to address any specific questions, Your Honor. I'm not sure I understand what's getting at me. Well, can you comment on what happens during a non-custodial hearing as opposed to a custodial hearing? He wasn't under arrest. He went voluntarily to the café. He thought he was there for a pat on the back for the things he had done, and when it turned to his apparent, at least the government's claim, his apparent trafficking in illegal tusks, that's when it changed. So isn't that different than in a custodial setting as to what comments can and can't be made about that? I don't think so, Your Honor. I think the court's sort of the classic situation, obviously, is if he's in custody, what's he's rights, and there's a difference there. But I think the court in Sepulveda, as I understood the holding, the Fifth Amendment forbids any comment by the prosecutor on the defendant's right to remain silent. Our quibble, if I can call it that, is not with the recording itself. We didn't move to suppress that at all. The problem becomes when the prosecutor walks the agent through the agent's interpretation of what that recording meant. Now, the trial court said, well, the agent really didn't add anything. That's simply not true. The agent directly in that exchange commented on and was asked questions, did Mr. Zaroska say such and such? Did he deny it? I think the point is he's not commenting on his silence at trial. He's commenting on his silence in that noncustodial conversation. And what's the precedent that suggests that it's impermissible for the government to comment on silence in a noncustodial setting? After all, your client was referring to that conversation as evidence of his cooperative attitude. So why in referring to a noncustodial exchange can't the government say, well, look, notice he was silent during it? It's not saying, look, notice he's silent now at trial. I'm not sure there is a precedent. I think subovative simply says what the rule is. You're saying that rule encompasses any kind of conversation that a defendant may have with government agents. Exactly. That if it's noncustodial, it's custodial, it makes no difference. We haven't said that. Well, I think subovative lays out a fairly clear rule. And I think if the government is now allowed to hold such and says there is this distinction, we're going to see a flood of cases where the government interviews folks. Government agents nowadays, I think, are very skilled about having these sort of cooperative chats with people they're targeting. And then at trial, a prosecutor gets to ask the agent, well, did he deny it? That's what the court seems to be inviting. And I suggest that that is a dangerous path for this court to take. I think that is going to directly, in fact, it did in this case, directly impugn not only right to remain silent, but the burden of proof. Now, the government, in its brief, suggests that somehow the defense, trial counsel himself, opened the door during his own closing, during my own closing. The problem with that statement is that the government started this ball rolling back in its case of chief, and in its second statement issue, during its first closing argument, even before the defense had a chance to even present a closing argument, referenced that cafe-bobo exchange. So the government, in its brief, really reaches back to a convenient point in time when really the proper point in time to start with should have been at trial during that testimony. But still, I'm just trying to figure out what the right is. The right is to remain silent, not in all facets of your life at all times. The right is to remain silent during the prosecution, right? You have a right to remain silent in the face of any police question. Any custodial police question. I think either custodial or non-custodial. If the police come up to you on the street and say, talk to us about what you did last night, and you're not in custody, you have every right to walk away. And I would be shocked if the prosecutor at trial could then say, well, he didn't talk to the police. So what if the police went up to him and said, hey, were you at this cafe last night where the shooting occurred? And he talked to them. And they asked him some more questions. He's not in custody. He's standing around the street corner. And at some point later on when he's charged with a crime, you're saying that under Sepulveda that that conversation, anything about that conversation is out of bounds. No. I think if there was a tape recorder going during that very conversation, the prosecutor is absolutely entitled to play that recording. And says, look, he didn't deny any of this. You're saying that's a comment on his right to be silent? Exactly. The part where there's commentary off, his silence on the tape, that's where the problem is. Now, in this case, the fact that the entire meeting was played was your choice. The government initially didn't want to play it. You wanted it all played. So it's all played. And there are these few comments that are made. But aren't you really focusing on what happened in the rebuttal? Isn't that your major – that the rebuttal is the first time it really – that you can make an argument that that's a comment on his remaining silent? I really don't think that's the first time. I think the first time is the testimony itself. And, again, the problem is not with the recording or any particular slice of the recording. The problem is with the agent saying and the question being asked, did he deny it? That's the problem. Well, I'm looking at what this – did the defendant ever say anything like, you're accusing me of something I didn't do here? No, he didn't. Did he ever raise his voice at you? No, he did not. Did he ever get mad at you or say that you misunderstood what happened? No. And then you get to the closing argument. There's three choices. You can say no, I'd rather not talk. You can agree to be interviewed and tell the truth. You agree to be interviewed and spin a web of inconsistent statements. You heard the entire interview. You decide which choice the defendant made. You say that's a comment on silence. I think the most egregious comment on silence is the testimony itself. And then when that's objected to and, of course, I was overruled and then not allowed to eliminate construction because I was overruled, you then get into the government reinforcing that during its phase one of its closing argument. But then during the rebuttal, the government just keeps on pounding it home and repeats it a total of four times. And it would be one thing, I think, and I'd still obviously argue it would be improper, but it would be one thing if we had this exchange at the cafe, the special engineer testified as he testified. There was an objection. There was a limit on construction. That's not what happened. What happened was that exchange happened. That testimony happened. There were objections. And then after that, we don't get an eliminating instruction until a time really just before closings when it sort of seems to melt into everything else anyway. So the jury has been marionading that thought. Can you just help me with that? So, Paul, they have the language you talk about, but it's clear the claim there and the concern is that it was a comment on the decision not to testify, not just the abstract thing. Suppose we thought that the right protects you against the prosecution commenting on your silence by not testifying. As opposed to the broadest way of thinking about that, if they comment on your silence ever in any context. How did the comment here on the silence in the Cafe Volvaldi conversation, effectively, in your view, if it did, amount to a comment on his failure to testify? Because the prosecutor asked Special Agent Guderra, in essence, in fact, did he deny it? That question goes to the heart of whether somebody is denying something. But I guess the question is, the question of whether he denied it then is different than a comment, look, now he is here, about to be put in jail, and he's still silent. That, we've said repeatedly, you cannot make that kind of comment. And what I'm asking is, why is that the same in terms of the prejudice it does to the defendant? To comment on, look, he's right here before you, he could testify and he's not, we've said clearly prejudicial, can't do it. Why is that the same as saying, back then when he had that first meeting and he's saying he was so cooperative, look, he didn't deny it. You could see how those would be different kinds of comments. You seem to be saying we must treat them the same, and I'm trying to figure out why. Because there's absolutely, the effect on the jury is the same. Just because the defendant happens to be sitting in the courtroom at that moment, the effect on the jury is the same. The jury hears the same thing. This defendant chose not to speak in his defense. That's what the jury hears. It doesn't matter if it was in the courtroom, or during a recording that's being played, or any other time. That commentary has a very powerful impact on the jury. And we're very careful during trials to protect the jury from that thought process. And here, the government just threw gas at the fire. Not once, not in a casual sort of accidental sort of way, but deliberately and throughout the course of the trial, even up until twice during rebuttal. Thank you. May it please the Court, John Arbat for the United States. Most of counsel's argument focused on what we call the prosecutor-guerrera exchange. I think it's just important to put that exchange in context. It was, in the course of a four-day trial, it was three questions and answers, only two of which questions could conceivably trench upon an arguable right to remain silent. It's just not plausible to suppose that at the end of day four, the jury would somehow think that those two questions that were asked several days ago was a suggestion by the prosecution that the defendant should have come up on the witness stand here at trial and testified in his own behalf. But doesn't the closing argument made by the government and the rebuttal, doesn't that sort of recycle what happened from the beginning? Well, Your Honor, I think it's important to remember that the first comment in closing, what we call closing comment one, was not objected to. It's absolutely clear that it was not objected to. So that's plain error of view. So I think all that you're really left with in the government's view is, how do we interpret closing comments two and three? And now we're talking about what happened on rebuttal. And I think the district court got it exactly right. This was a fair response by the government to defendant's theory of the case, essentially, which was the Kathy Vivaldi interview. When you jurors hear it, and I want you to hear it in its entirety, this interview exonerates the defendant. And that was the theme of Mr. Zoroskis' defense. And in the closing statements, the defense counsel closing was continuing on that theme. They have not shown one iota, not one shred, not one little word that says Mr. Zoroskis, Andy, knew that those tusks were coming from Canada. What's the human reaction? You've got three government agents sitting there suddenly accusing you of being a tusk smuggler. What are you going to do? He exhorted the jurors to consider the defendant's natural human reactions. This is all in the record. And naturally, the prosecution responded to that. Just to test that proposition, I don't know if it will work, but just as a hypothetical, imagine that this taped conversation occurs on the stand at trial in the exact same language. Could the prosecution at trial say, look, you just heard him on the stand. When we got to the key moment, he stayed silent? I think that that would have been a fair approach, Your Honor, and it goes back to some of the earlier questions. So does your argument depend on us saying that would be okay, too? No, no, it doesn't, Your Honor. So that's what I'm trying to figure out. Why is it significant that it was a non-custodial setting at the prior interview? Why is that less prejudicial to comment on that silence than it would be to comment on the silence if it was given on the stand? Because under Supreme Court case law, and this actually isn't briefed, but it's the Doyle issue that I believe the district judge referred to in his order denying a motion for a new trial, and it's not raised on appeal. But the Supreme Court has made it quite clear that in the non-custodial context, which is what we have here, if at trial the defendant decides to take the stand and testifies, he can be impeached with his non-custodial, pre-arrest, pre-merandizing silence or inconsistent statements that he made. And so if, in Your Honor's hypothetical, it would have been perfectly fine under that line of cases for the prosecution to do with it, to try to impeach Mr. Zoroskis had he taken the stand. I would just, I found the case helpful. He could have used his non-custodial silence to impeach, right? In non-custodial, yes. Yeah, to impeach when he takes the stand. Yes. But we have a slightly different situation. He hasn't taken the stand. So he's silent here. And I guess if I understand the defense counsel's argument, the thing that one would be concerned about is since the jury observes this person sitting there silently in the trial, and then the prosecutor is saying, look, when we asked him about these issues back then, he was silent. At which point the jury looks over, and he's still silent. So the worry would be the jury starts thinking, oh, this guy's silence is the kind of silence that the prosecutor just commented on, which is silence to cover up guilt, when the general rule is we're not supposed to be commenting on the silence. So it's sort of an inferential argument, if I understand it. Well, I think it's a – Too big of an inference. It is a very – it's a very attenuated inferential argument. So could you explain why? Why is that not a – Well, if you remember what the standard is, and it's whether the comments were manifestly intended or of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. That's the court standard. And why wouldn't they? That's what I would – why would the fact that he's commenting on the fact that he was silent at the Cafe Vivaldi interview not naturally lead you to think he's still silent here? It must be the same reason. Because the context of this is the defense's theory of the case, which is that if you listen carefully to the tape, jurors, you'll conclude that the interview exonerates my client. And once that was put forth as the theory of the defense, it – No, but that's a reason just to say that he's kind of opened the door to this. It would be equally true at trial. I'm asking you, is there any reason why a comment about silence in that setting should not be thought by the jury to be implicitly a comment about his silence in this setting, which is the trial setting? Yes, Your Honor. Well, for one thing, the district court repeatedly, including right after the close of rebuttal, reminded the jury, gave an instruction that you cannot make any inference from the defendant's decision not to come up on the stand and testify. And the entire context of this was what happened at the Cafe Vivaldi interview. It was not what's happening here at trial. The defendant has decided not to take the stand. That somehow is relevant. It's not. You know, what troubles me is what Judge Barron just said, because I think it's hard for a jury sometimes to distinguish between – you're trying to make rather narrow distinctions. What happened before, when you talk about that, jury isn't going to infer from that that, as Judge Barron said, this is a continuation. You still don't have any answers. And the rebuttal, unless you did say that it was opened up by counsel's comments, is close. Your Honor, I think that closing comments two and three were clearly invited responses that fairly responded to the defense's challenge. There's not one shred of evidence. And then there was the government's response. So you're left with closing comment one, which was not objected to, and then you're left with the very – the tooth, the tiny snippet of Guadero's direct examination. And I think a jury, especially when instructed by the court just before it goes into deliberations, the jury knows the difference between silence in this interview tape that we've heard and that has been the subject of evidence versus the judge's telling us, don't infer anything from the separate silence of the defendant here in the courtroom. One is fair game, and the other we're to put out of our minds. And as this Court has said in any number of cases, the courts presume that the jury follows the district court's instructions. Do you have a harmless error argument anyway? Yes, Your Honor. That's developed in our brief. And I think that even if you were to find that all four of the comments that are at issue on appeal were improper, under the court's poison the well test, the error was harmless. Even if we said that assuming that, it still doesn't make any difference in the context of this case. That's right. And we've cited cases where the court has taken that approach, has just assumed arguendo that the comment was improper, but gone on to apply the poison the well test and found there's no basis for a new trial. But here you can, at the threshold, say that in this context the complaint of prosecutorial remarks were not improper to begin with. Thank you. All right.